# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 24, 2013 Session

## STATE OF TENNESSEE v. TRAVEI PRYOR

**Direct Appeal from the Criminal Court for Knox County**
**No. 96358     John Kerry Blackwood, Judge**

**No. E2012-02638-CCA-R3-CD - Filed April 17, 2014**

JOHN EVERETT WILLIAMS, J., dissenting in part, concurring in part.

After reviewing the records and law as it currently stands, I must respectfully dissent from the majority's reasoned opinion with regard to its *State v. White* determinations. I would affirm the convictions as they were entered, although merging those counts which were alternatively charged. In all other regards, I join in the majority's opinion.

First, I believe that the *White* issue is only relevant to two of the victims in this case, Joshua Cox and Brett Stanton. These victims were the only ones which were the named victims of aggravated robbery as well as of aggravated kidnapping. I concur in the argument conceded by the State, as well as in several other opinions filed in this court.

The majority asserts that our supreme court never said in Anthony/Dixon/White line of cases that the fact that the victim of the kidnapping was different than the named victim of the accompanying felony eliminated the need for due process analysis. The majority relies upon *Bowman*, 2013 Tenn. Crim. App. LEXIS 735, at *44, as well as two dissenting opinions filed in *Williams*, 2014 Tenn. Crim. App. LEXIS 11, at *34 and *Teats*, 2014 Tenn. Crim. App. LEXIS, at *90.

However, the majority fails to acknowledge a separate line of cases filed in this court which reached a different conclusion. *See State v. Gary S. Holman*, No. E2012-01143-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 65 (Tenn. Crim. App Jan. 27, 2014); *Williams*, 2014 Tenn. Crim. App. LEXIS 11; *Teats*, 2014 Tenn. Crim. App. LEXIS 18; *Mathis*, 2013 Tenn. Crim. App. LEXIS 757, *Elliott*, 2002 Tenn. Crim. App. LEXIS 987. This line of reasoning notes that the *White* instruction appears to have been drafted with the assumption that the defendant is being tried for dual offenses against a single victim. *Williams*, 2014 Tenn. Crim. App. LEXIS 11, at *21. The *Williams* majority noted that "[l]ogic dictates that, if the

*White* court intended the instruction to be required in cases involving a kidnapping charge that was not accompanied by a robbery (or rape) charge involving *the same victim*, the *White*, court would have phrased the instruction as "the victim *of the underlying felony*." *Id*. at **21-22. The panels employing this line of reasoning "read *White* as requiring the expanded kidnapping charge only when the jury is required to determine whether the defendant committed dual offenses of kidnapping and an accompanying crime for which some measure of detention was necessary *against* the *same victim*." *Id*. at **24-25.

I have previously adopted this line of thought in my case decisions and believe it should be applicable to the present case. In so applying that reasoning to this case, it follows that the *White* instruction was not mandated for the kidnapping of Landry Stanton, Vanessa Griph, Paul St. Aubin, or Robert Gorman.

While both I and the majority agree that *White* sets out the appropriate standard, as evidenced by the decisive split within this court, more instruction and guidance is needed for its proper application. I look forward to the resolution of these issues by our supreme court so that justice may be fairly applied to all.

The need for guidance and clarification on this issue is demonstrated by the three different outcomes of three defendants involved in one crime. As cited above, *Josh L. Bowman* was indicted and tried for the same crimes as *Gary S. Holman*, including the especially aggravated kidnapping of Ms. Graves. The facts of the case establish that defendant Bowman was in another room at the time of the kidnapping. Defendant Bowman raised the *White* issue on appeal and was granted a new trial on that charge. *See Josh L. Bowman*, 2013 Tenn. Crim. App. LEXIS 735, *37-48. Defendant Holman, who is the one who physically restrained Ms. Grave was convicted of false imprisonment, and he did not raise the *White* issue on appeal. Nonetheless, review was afforded pursuant to plain error, but it was concluded that no relief was warranted. The third defendant, Chad Medford, likewise did not raise the *White* issue on appeal, and he was afforded no review through plain error of his aggravated kidnapping conviction. *State v. Chad Medford*, No. E2012-00335-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 475 (Tenn. Crim. App. June 5, 2013). Defendant Medford was not even present in the home when the crimes occurred. These varying results in the kidnapping of a single victim do not demonstrate equality in treatment under this law as it currently stands.

As the State concedes, I do agree with the majority that the *White* instruction should have been given in this case as it related to Brett Stanton and Joshua Cox, as they were also the named victims of the aggravated robberies and aggravated kidnappings. Thus, there was in fact an accompanying felony which required the jury to determine if the kidnapping was a substantial interference aside from the accompanying robbery or if it was merely

confinement or movement incidental to the robbery. As noted in *White*, it was reasoned that the properly instructed jury's finding beyond a reasonable doubt that all the elements of kidnapping coupled with the reviewing court's "task . . . of assessing the sufficiency of the convicting evidence" is sufficient to protect the defendant's due process rights. *White*, at 578. That protection was not present in this case because of the failure to properly instruct the jury who may not have specifically made "a determination of whether the removal or confinement [was], in essence, incidental to the accompanying felony or, in the alternative, [was] significant enough, standing alone, to support the conviction." *Id*. This issue was raised by the proof with regard to these two victim, so the charge should have been given to the jury.

However, as pointed out by the majority, this failure does not require automatic reversal of the convictions. It is a non-structural constitutional error which is subject to harmless error. Again, the test is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Climer*, 400 S.W.3d at 556. Unlike the majority, I would conclude that the failure to charge was harmless as I see no circumstance in which the verdict would have changed.

I do agree with the majority's statement of the evidence and conclusion that several of the enumerated factors provided by our supreme court weigh in favor of not finding this failure to charge to be harmless. Clearly, the removal did occur during the robbery and ended as soon as the defendants exercised control over the stolen property. However, because of the weight of the remaining factors, I do not believe that the incident was subject to different interpretations by the jury and was therefore harmless.

The factor regarding the increased risk of violence and harm plays most prevalent in my decision. These defendants chose to force their way into a home where a family resides and ordered them to move around within that home. The risk of violence and harm in a home invasion regarding confinement and movement is heightened because the people within the home are family, and the robbery may involve personal and sentimental items. It is different than a situation involving strangers and cash such as in a liquor or convenience store robbery. The risk of resistence is increased in a home invasion, which exponentially raises the risk of harm to the victims in these situations. For example, it takes little imagination to determine the increased risk of resistence when a mother or father is held by a defendant in their home and the defendant tells his accomplice to go and retrieve the children from another room at gunpoint or while threating violence.

As the law has developed in this area, I am comfortable with due process or notions of fair play attaching to a defendant when the movement is slight and incidental to the robbery. As examples, when an armed robber demands the cashier move away from the cash

register in order for the defendant to grab the money and run or when the victim is asked to get on his knees and give the robber his wallet and the robber runs. However, I believe that home invasions involve a greater risk of harm to all present, and the same due process and notions of fair play should not attach to defendants that intentionally embark upon a home invasion terrorizing every occupant and subjecting the innocent victims to great harm and fear. As the law has recognized for years, the home is considered a sacred place. The evidence in this case, to me, clearly establishes beyond a reasonable doubt that the victims were kidnapped and the fear, terror, and risk of harm they endured should not be excused by the defendants saying, "I was robbing another."

Moreover, as pointed out by the State, the robberies in this case could have been accomplished with virtually no confinement of the victims. Mr. Stanton's marijuana was in plain sight when the defendant entered the bedroom, and Mr. Cox's wallet was lying on the table. Thus, the retrieval of these items, which simply could have been taken, does not make any confinement or removal inherent in the nature of the separate robbery. Had the defendant simply asked Brett Stanton where the marijuana was located while they were in the bedroom, the removal or confinement of all the victims to the living room would have been unnecessary.

Based upon the above facts, I respectfully dissent from my colleagues conclusion in regard to the *White* issue. Any error was harmless, and I would affirm the convictions.

_____

JOHN EVERETT WILLIAMS, JUDGE